64  285
171s 624

## George M. Welty v. H. R. Jacobs and Ulysses D. Newell.

1. Specific Performance—*When a Court of Equity Will Not Decree.*—A court of equity will not entertain a bill for specific performance of a contract, when it is manifest that before a hearing can be had, the time for performance, which is the essence of the contract, will have expired.

2. Injunctions—*Will Not Issue to Restrain a Party from Refusing to Perform a Contract.*—A court of equity has power to restrain a party from interfering with the performance of a contract, but it can not restrain him from refusing to perform it; for such refusal the remedy is at law.

· **Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed May 14, 1896.

### STATEMENT OF THE CASE.

This is an appeal from the decree of the Superior Court of Cook County, Illinois, dismissing the bill of complaint on the ground that the complainant had an adequate remedy at law.

On the 28th day of December, 1895, the complainant filed his bill of complaint in the Superior Court of Cook County, setting up that he was a theatrical manager, and that on the 9th day of April, 1895, he entered into a contract with H. R. Jacobs, manager, representing M. J. Jacobs, proprietor of the Alhambra Theater in the city of Chicago. The contract provides that Welty shall play his company, known as "The Black Crook" company, at the Alhambra Theater for seven consecutive nights, with usual matinees, commencing with matinee of December 29, 1895, he on his part, agreeing to furnish a company of first class artists, together with special scenery necessary for the play, all perishable properties, calcium lights when required, extra ballet and supers, and to deliver to the party of the first part ten days in advance, prepaid and free from all charges, certain advertising material specified.

Jacobs, on his part, was to furnish the house well cleaned, lighted and heated, together with stock scenery and equipments contained in the house, nine men for stage hands, regular ushers, gas man, property man, janitor, ticket sellers, door keepers, orchestra, house programmes and license, bill boards, bill posting, distribution of litho's and other printing, and the usual newspaper advertisements, and resources of the theater in stage furniture and properties not perishable.

The gross receipts were to be divided between the parties, Welty receiving sixty per cent and Jacobs forty.

The contract further provides that should the attraction or any part of the company not prove satisfactory to Jacobs, or the company or attraction is not as represented to him or his agent at the time of making said contract, then Jacobs should have the right to cancel this contract by giving Welty one week's written notice.

The bill of complaint further alleges that the complain-

ant has kept and fully performed all the covenants and agreements on his part; that Jacobs did not claim or pretend that the attraction or any of complainant's company was not satisfactory to him, nor that the company or attraction was not as represented to him at the time of making said contract, but does wrongfully and fraudulently pretend and claim, and state to complainant, that since the making of said contract and within the last three days, he had entered into an arrangement with Ulysses D. Newell to lease to him the Alhambra Theater and appurtenances during the same period of time provided in the contract with complainant; that he claims and pretends that the said Newell informed him that if he did not cancel the contract with the complainant, and lease said theatre and appurtenances to him, said Newell, for the said period, that he would and could obtain Havlin's Theater for the period immediately preceding the period mentioned in said contract, and thus destroy the profitable production of said play at the Alhambra Theater during the period mentioned in said contract. The bill charges such pretenses and statements to be wholly colorable excuses for the breaking of the contract.

The bill further sets forth that complainant has a company of forty performers under contract; that he will be obliged to pay their salaries whether they perform or not, and will be compelled to remain idle during the period mentioned in said contract; that his performers will become dissatisfied and seek other positions on account of the difficulty between complainant and said Jacobs, and he will suffer in his reputation as a theatrical manager; that he had been to considerable expense in producing the necessary printing tendered to Jacobs for the production of the play, and at large expense in transporting his company to Chicago, and making necessary preparations; that the monetary value of his contract for the use and occupation of said Alhambra Theater and its appurtenances can not be determined either actually or approximately in any other manner than by carrying out and fully performing the contract according to its terms and conditions; that Jacobs and Newell have announced their intention of preventing

complainant from carrying out said contract and of depriving him of the gains and profits he would otherwise make by keeping complainant out of the possession and use of said theater; that Jacobs and Newell are both financially irresponsible.

Bill prays for an injunction enjoining the defendants from in any manner hindering or preventing complainant or his company from taking possession of said Alhambra Theater, its appurtenances, equipments and stage properties as mentioned and provided in the contract between complainant and Jacobs, on December 29, 1895, and from in any manner hindering, delaying, interfering with or preventing complainant from producing the play known as " The Black Crook" at the Alhambra Theater for the seven successive nights, with usual matinees, commencing with the matinee of December 29, 1895, or from doing any act or acts, now or hereafter, during the period from December 29, 1895, to January 4, 1896, inclusive, to interfere with, hinder, prevent or molest complainant in the use, occupation or enjoyment of the said Alhambra Theater and its appurtenances, stock scenery, equipments and stage property, or in the production of the said play by complainant at the said theater during said period, and from using or occupying the said Alhambra Theater, its stage, stock scenery, equipments or properties or any part thereof, during the period from December 29, 1895, to January 4, 1896, inclusive, and from allowing, permitting or consenting to any other person or company using, occupying the same or any part thereof, during said period, and that Jacobs be enjoined from refusing to furnish complainant during the period aforesaid, the necessary light, heat, music, regular stage hands, stage carpenters, flymen, ushers, gas man, property man, janitor, ticket sellers and door keepers, and other employes and equipments, in accordance with the terms of said contract.

An injunction was issued at the time the bill was filed, and on the same day was served on the defendants, H. R. Jacobs and Ulysses D. Newell.

On January 3d, both Jacobs and Newell filed their answers to the bill of complaint, and claimed the complainant

had a complete remedy at law. The defendant, Newell, by his answer claimed to be an innocent party, having contracted with Jacobs on the supposition that the Welty contract was canceled. He also claimed that the bill is without equity, and prays the same advantage as though he had demurred to the bill.

Replication was immediately filed to said answers, and the court, by consent of the complainant and defendants, H. R. Jacobs and U. D. Newell, heard the cause on its merits, together with the motion of the said defendants to dissolve the injunction.

The court, by that decree, finds that the injunction was violated by the defendants, H. R. Jacobs and Ulysses D. Newell.

The court further found, however, that the equities of said cause were with the said defendants, and that the complainant had a complete and adequate remedy at law, and therefore that the said injunction was improvidently issued.

It was therefore decreed that the injunction be dissolved and the bill dismissed.

From which order an appeal was prayed and allowed to this court.

BULKLEY, GRAY & MORE, attorneys for appellant.

JAMES E. PURNELL, attorney for appellee Jacobs.

PARTRIDGE & PARTRIDGE, attorneys for appellee Newell.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The only remedy that a court of equity could give the complainant that might not be given by a court of law, would be to direct a specific performance of the contract, and to forbid the defendant to allow any one, save the complainant, to use the theater during the period from December 29th to January 4th, inclusive.

The court could not compel a complete specific performance. It could not compel the defendant to supply "stage

hands, flymen, regular ushers, property men, janitor, ticket seller, door-keepers, orchestra," although it might mulct the defendant in damages for not supplying such help. The distinction between restraining one from interfering and restraining a party from refusing to furnish, is obvious.

The contract contemplated that the defendant Jacobs should supply the regular help belonging to his theater. Such help might refuse to work, and could not be compelled to. Am. Live Stock Com. Co. v. Chicago Live Stock Exch., 41 Ill. App. 149; Kennicott v. Leavitt, 37 Ill. App. 437.

It was impossible for the defendants to be brought into court, and this cause heard, before the time for the execution of the contract would have been at an end. The performance was to begin December 29th and end January 4th. The bill was filed December 28th; the defendants could not be compelled to answer the bill until after January 14th. The law is such that ere a hearing could have been had the contract would have expired. It was for this reason, also, impossible for the court to compel a specific performance of the contract. A court of equity ought not to entertain a bill for specific performance of a contract when it is manifest that before a hearing can be had, the time for performance, it being of the essence of the agreement, will have expired. Hovannian v. Bedessern, 63 Ill. App. 353; Pomeroy's Eq., Sec. 1405.

The injunction granted was too broad, and as granted could not have been enforced. The defendant Jacobs could not, by an injunction restraining him from refusing to furnish to the complainant the usual and necessary "light, heat, music, regular stage hands, stage carpenter, flymen, ushers, gas man, property men and equipment in accordance with the terms of said contract," have been compelled to supply such men and equipments.

If the defendant Jacobs refused to carry out his agreement, the complainant had an adequate remedy at law, while under the circumstances a court of equity could not give anything save money damages.

The decree of the Superior Court, dismissing the bill, is affirmed.